IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKY KIGER, derivatively on behalf of QUALCOMM INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>STEVE MOLLENKOPF, MARK D. MCLAUGHLIN, MARK FIELDS, BARBARA T. ALEXANDER, FRANCISCO ROS, JEFFREY W. HENDERSON, ANN M. LIVERMORE, HARISH MANWANI, JAMIE S. MILLER, CLARK T. RANDT, JR., IRENE B. ROSENFELD, KORNELIS SMIT, ANTHONY J. VINCIQUERRA, and DOES 1–30,<br><br>Defendants,<br><br>– and –<br><br>QUALCOMM INCORPORATED, Nominal Defendant. | Civ. No. 21-409-RGA |

## MEMORANDUM OPINION

Blake A. Bennett, COOCH & TAYLOR, P.A., Wilmington, DE; Francis A. Bottini, Jr., Albert Y. Chang, Anne Beste, and Yury A. Kolesnikov, BOTTINI & BOTTINI, INC., La Jolla, CA. *Counsel for Plaintiffs Becky Kiger and Heather Nelson.*

Peter J. Walsh, Jr. and Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Koji F. Fukumura, Peter M. Adams, and Heather Speers, COOLEY LLP, San Diego, CA; Brian M. French, COOLEY LLP, New York, NY. *Counsel for Individual Defendants and Nominal Defendant.*

November 15, 2021
Wilmington, DE

ANDREWS, U.S. DISTRICT JUDGE:

Plaintiffs Becky Kiger and Heather Nelson assert derivative claims on behalf of Qualcomm Inc. (the "Company") against Defendants Steve Mollenkopf, Mark D. McLaughlin, Mark Fields, Jeffrey W. Henderson, Ann M. Livermore, Harish Manwani, Jamie S. Miller, Clark T. Randt, Jr., Irene B. Rosenfeld, Kornelis Smit, and Anthony J. Vinciquerra, who were directors of the Company at the time the Complaint was filed (collectively, the "Director Defendants"), and Defendants Barbara T. Alexander and Francisco Ros, who are former directors of the Company (collectively with the Director Defendants, the "Defendants").[1] In general, Plaintiffs allege that the Defendants breached their fiduciary duties and violated Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), by allowing unlawful and discriminatory practices to proliferate at the Company, thereby exposing the Company to significant risk.

Defendants have filed a motion to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) and Rule 23.1. (D.I. 29). The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332. (D.I. 1 ¶¶ 28-29). For the following reasons, the Defendants' motion to dismiss is granted.

I. BACKGROUND

Qualcomm is a Delaware corporation headquartered in San Diego, California. (D.I. 1 ¶ 33). It creates semiconductors, software, and services related to wireless technology. (*Id.*).

On July 17, 2020, Becky Kiger filed the first complaint in this action, asserting derivative claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, abuse of control, unjust enrichment, and violation of Section 14(a) of the Securities Exchange Act of 1934, 15

---

[1] Defendant Mollenkopf was also the Chief Executive Officer of the Company at the time the Complaint was filed.

1

U.S.C. § 78n(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9. On July 23, 2020, Heather Nelson, through the same counsel, filed a substantively identical complaint. On January 12, 2021, the Kiger and Nelson Actions were consolidated (D.I. 18), and on February 9, 2021, Plaintiffs designated the Kiger complaint (the "Complaint") as the operative one (D.I. 19).

Unlike the typical derivative action, there was no specific event involving the Company or Defendants that gained public notoriety and precipitated the filing of these complaints. Accordingly, there is little background for the Court to provide.

The Complaint relies in part on the Company's annual meetings and the proxies issued in support thereof. Qualcomm filed its 2019 proxy statement on January 24, 2019 and its 2020 proxy statement on January 23, 2020 (collectively, the "Proxies"). Both Proxies contained recommendations concerning the election of director nominees to the Board; advisory ratification of the Board's selection of PricewaterhouseCoopers LLP as the Company's independent auditor; and advisory approval of executive compensation. (*See* D.I. 31-1, Exs. D, G).

## II. LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiffs must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the Plaintiffs. *In re Fisker Auto. Holdings, Inc.*, 2017 WL 492996, at *2 (D. Del. Feb. 7, 2017). But the court need not accept as true allegations in the complaint contradicted by documents on which the complaint relies. *In re: Enzymotec Sec. Litig.*, 2015 WL 8784065, at *11 (D.N.J. Dec. 15, 2015). The court's review is limited to the allegations in the complaint, exhibits attached to the complaint, documents incorporated by reference, and items subject to judicial notice. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. DISCUSSION

Broadly speaking, Defendants assert three arguments. First, all the claims should be dismissed for failure to plead demand futility pursuant to Rule 23.1. Second, the Section 14(a) claims should be dismissed for failure to state a claim pursuant to Rule 12(b)(6). Third,, Plaintiffs lack Article III standing to seek mandatory injunctive relief.

As to the third argument, Defendants do not question Plaintiffs' status as stockholders of the Company. Rather, Defendants appear to argue that Plaintiffs have failed to state a claim for which such mandatory injunctive relief might be granted as a remedy. Because no claims are surviving the motion to dismiss, the Court need not address the standing argument at this time. The Court will address the first two arguments in reverse order, starting with the failure to state a claim under Section 14(a).

### A. Section 14(a) Claims

Section 14(a), and Rule 14a-9 promulgated thereunder, prohibit a corporation from issuing a proxy "containing any statement which ... is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a); 15 U.S.C. § 78n(a)(1). To establish that a proxy violates Section 14(a), the plaintiff must prove that: (1) the proxy contained a false or misleading statement; (2) the misstatement was material; and (3) the misstatement caused the plaintiff injury. *Kooker ex rel. Hecla Mining Co. v. Baker*, 497 F. Supp. 3d 1, 6 (D. Del. 2020).

3

Plaintiffs contend that the Complaint adequately alleges that six statements or omissions were materially misleading.[2] (D.I. 34 at 24). Each statement or omission is addressed in turn.

### 1. Governance Committee Goals

Plaintiffs allege that the 2019 Proxy was materially false and misleading when it stated, "The Governance Committee's goal is to assemble a board of directors that brings to us a diversity of perspectives and skills." (D.I. 1 ¶ 93). This statement is not actionable because it is not material.

A statement is not material if it involves "subjective analysis or extrapolations, such as opinions, motives and intentions, or general statements of optimism." *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 283 (3d Cir. 2010) (quoting *EP MedSystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 872 (3d Cir. 2000)). "Such statements 'constitute no more than puffery and are understood by reasonable investors as such.'" *Aetna*, 617 F.3d at 283 (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 538 (3d Cir. 1999)).

Statements about a board's or a company's goals are inactionable puffery, as multiple courts have held. *See Falat v. Sacks*, 2021 WL 1558940, at *6 (C.D. Cal. Apr. 8, 2021) (statement that Monster "seek[s] to capture diversity in [its] candidates" is puffery); *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 298 (S.D.N.Y. 2019) ("statements about goals" are "classic puffery"); *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 549 (W.D. Pa. 2019) ("a declaration of goals and aspirations for the Company ... 'are inactionable puffery'" (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014)). Therefore, the Section 14(a) claim based on the "goal" statement is dismissed with prejudice.

---

[2] Arguments based on any other statements or omissions alleged in the Complaint are deemed waived because they were not presented in Plaintiffs' opposition brief. *See Walsh v. Fusion Japanese Steakhouse, Inc.*, 2021 WL 2917795, at *5 (W.D. Pa. July 12, 2021) ("A party that fails to address an argument in its brief in opposition ... waives that argument").

4

### 2. Governance Committee Instructions

Plaintiffs allege that the 2020 Proxy was materially false and misleading when it stated, "[T]he Governance Committee will include, and instruct any search firm it engages to include, women and racially/ethnically diverse candidates in the pool from which the Governance Committee selects director nominees" (hereinafter, the "Inclusion Statement"). (*See* D.I. 1 ¶ 94). The Inclusion Statement is not actionable because Plaintiffs have failed to allege any facts supporting a reasonable inference that it was false or misleading.

Plaintiffs argue that the Inclusion Statement was false and misleading because "Qualcomm has no African Americans on its Board." and "[N]o African American or other minority candidate has been elected to the Qualcomm Board in the last six years." (*Id.* at ¶ 96). The fact that no minority candidate has been elected to the Board in the last six years does not necessarily mean that the Governance Committee did not include or instruct its search firms to include "racially/ethnically diverse candidates" in its pool of candidates. It could simply mean that those candidates did not advance past the larger candidate pool.

Plaintiffs further argue that the Inclusion Statement is false or misleading because the Governance Committee "either has no intention to actually nominate [racially and ethnically diverse] persons to its Board or it engages in efforts to thwart the nomination of such persons." (*Id.*). The Proxy statement, however, does not state or suggest that the Governance Committee will in fact nominate a racially or ethnically diverse person to its Board, only that it will include such persons in the candidate pool. "The fundamental purpose of the Securities Exchange Act is to implement 'a philosophy of full disclosure;' once full and fair disclosure has occurred, the fairness of the terms of the transaction is beyond the scope of the Act." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 638 (3d Cir. 1989).

Because Plaintiffs have not adequately alleged that the Inclusion Statement is false or misleading, the portion of the Section 14(a) claim based on this statement is dismissed. *See Laborers' Local #231 Pension Fund v. Cowan*, 300 F. Supp. 3d 597, 606-09 (D. Del. 2018) (dismissing Section 14(a) claim quibbling with the accuracy of a company's financial projections because the proxy did not represent that the projections were accurate, only that they had been provided to a potential buyer, and plaintiffs did not allege that the projections disclosed in the Proxy were not the same as the ones given to the buyer). Although I doubt that Plaintiffs can assert a Section 14(a) claim based on the Inclusion Statement, the claim is dismissed without prejudice.

### 3. Proxy Access Rules and Term Limits

Plaintiffs contend that the Proxies were misleading because they failed to disclose (i) that "the purpose and effect of [the Company's] 'proxy access' rules ... was to inhibit the nomination and election of Blacks and minorities to the Board,"[3] and (ii) "that the purpose of the lack of term limits is to entrench the current directors in office and prevent African Americans and minorities from having fair opportunities to be elected to the Board." (D.I. 1 ¶¶ 104-112, 119(b)).

There is no duty under § 14(a) to disclose all material information. *In re Keryx Biopharm., Inc.*, 454 F. Supp. 3d 407, 415 (D. Del. 2020); *Heinze v. Tesco Corp.*, 971 F.3d 475, 483 (5th Cir. 2020) ("The texts of Section 14(a) and SEC Rule 14a-9 do not provide a freestanding cause of action to challenge any and all material omissions from proxy statements.").

Instead, an omission of information from a proxy statement is actionable only if "SEC regulations specifically require disclosure of the omitted information, or the omission makes other

---

[3] "Proxy access" rules set forth a company's requirements for a stockholder to nominate a director to the company's board of directors. (D.I. 30 at 21). For example, at the time the Complaint was filed, a Qualcomm stockholder may include director nominees in a proxy only if the stockholder "own[s] at least 3% of [the Company's] outstanding common stock continuously for at least the previous three years." (D.I. 1 ¶ 104).

statements in the proxy statement materially false or misleading." *Seinfeld v. Becherer*, 461 F.3d 365, 369 (3d Cir. 2006) (quoting *Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir.2002)). If the claim depends on the latter, then the complaint must point to the "precise statement" in the proxy rendered false or misleading by the alleged omission. *See Heinze*, 971 F.3d at 480 ("[F]or omission-based claims, the plaintiff must identify specific 'statements therein' that are rendered 'false or misleading' by the alleged omissions."); *Hysong*, 2011 WL 5509100, at *6 ("[I]n order to plead facts to sufficiently allege ... a section 14(a) claim, a plaintiff must identify a precise statement in the proxy that is either affirmatively misleading in and of itself, or is rendered misleading by operation of a materially omitted fact.").

"To the extent plaintiffs contend it is enough for a plaintiff simply to allege that material information was omitted from a proxy statement in order to state a claim under § 14(a), plaintiffs are incorrect." *Louisiana Mun. Police Employees Ret. Sys. v. Cooper Indus. plc*, 2012 WL 4958561, at *8 (N.D. Ohio Oct. 16, 2012). "Omissions constitute violations of § 14(a) only if they are both material *and* make other statements false or misleading." *Keryx*, 454 F. Supp. 3d at 415 (brackets omitted) (emphasis added).

Plaintiffs have not cited an SEC Rule that specifically required Defendants to include in their Proxies a statement that the purpose and effect of the proxy access rules and the lack of term limits is, as Plaintiffs allege, to "inhibit the nomination and election of Blacks and minorities to the Board." Thus, to be actionable, the Plaintiffs must identify other statements in the Proxy that these omissions rendered materially false and misleading. Plaintiffs have failed to do so. Therefore, the portion of their Section 14(a) claim based on the proxy access rules and term limits is dismissed without prejudice. *See Keryx*, 454 F. Supp. 3d at 415 (holding that plaintiffs' failure to allege that the omission rendered a statement in the Proxy false or misleading was "fatal to their

7

claim"); *Cooper.*, 2012 WL 4958561, at *10 (dismissing claim because "plaintiffs have not identified in their Complaint … any specific statement or statements in the Proxy that are rendered false or misleading by operation of the alleged omissions).

### 4. Executive Compensation

Plaintiffs allege that the Proxies misrepresented the weight the Compensation Committee gave to an executive's efforts to increase diversity when approving the amount of the executive's compensation. (D.I. 34 at 25; D.I. 1 ¶¶ 113-16). According to the Complaint, "In reality, those kinds of salutary and important goals do not count for any kind of significant weighting towards the amount of compensation that gets awarded to executives at Qualcomm. In fact, at Qualcomm over 90% of executive compensation is based on the Company's financial performance." (D.I. 1 ¶ 116).

Plaintiffs have not identified a single statement in the Proxies that their allegations would render false or misleading. Each Proxy contained around thirty-pages disclosing in detail the multiple elements of an executive's compensation package, including why each element was awarded to a particular executive, the amounts awarded under each element, and how those amounts were calculated.[4] (D.I. 31-1, Ex. D at 47-75; Id., Ex. G at 36-73). Not a single page mentions "diversity" in any context, nor are there any claims that the Compensation Committee gave any weight to an executive's efforts to increase diversity when determining compensation levels. (*See* D.I. 1 ¶¶ 114-15).

To the contrary, both Proxies clearly stated what Plaintiffs themselves allege – that over 90% of executive compensation is based on the Company's financial performance. (*See* D.I. 31-

---

[4] "If the Complaint specifically references or quotes documents that are subsequently attached in defendant's motion to dismiss, and there is no dispute as to their authenticity, a court may consider them without converting the motion to one for summary judgment." *Hurst v. Merck & Co.*, 1996 WL 527053, at *3 (D.N.J. Mar. 18, 1996).

8

1, Ex. D at 63 (2020 Proxy stating that: "For fiscal 2019, 94% of our CEO's target TDC [Total Direct Compensation] and 91% of our other NEOs' [Named Executive Officers'] aggregate target TDC was based on Company performance"); *Id.*, Ex. G at 59 (2019 Proxy stating that: "For fiscal 2018, 94% of our CEO's target TDC and 90% of our other NEOs' aggregate target TDC was based on Company performance.")).

This means that no more than 10% of an executive's compensation could be based on efforts to increase diversity. Plaintiffs cannot state a Section 14(a) claim "where the omitted fact can be determined by simple arithmetic and all the information necessary to perform the calculation was fully disclosed." *Hurwitz v. LRR Energy, L.P.*, 241 F.Supp.3d 491, 500–01 (D. Del. 2017). Accordingly, the Proxies did not misrepresent how much weight the Compensation Committee gave to an executives' efforts to increase diversity when making compensation decisions. Because Plaintiffs have failed to adequately allege that the Proxies misrepresented how the Governance Committee made decisions regarding executive compensation, this portion of the Section 14(a) claim is dismissed. Although I doubt that Plaintiffs can assert a Section 14(a) claim based on the executive compensation disclosures, the claim is dismissed without prejudice.

### 5. Failures of Oversight

Finally, Plaintiffs allege that Defendants violated Section 14(a) by failing to disclose that "the Company was allowing unlawful and discriminatory practices to proliferate at the Company, thus exposing the Company to significant risk." (D.I. 34 at 26; *see also* D.I. 1 ¶¶ 119(f)-(k)). This Section 14(a) claim, based on the omission of alleged oversight failures, rehashes the same allegations Plaintiffs assert under their breach of fiduciary duty claims. "The law is well-established," however, "that bootstrapping a federal securities claim to a cause of action for breach of fiduciary duty is not permissible." *Behrmann v. Brandt*, 2020 WL 4432536, at *18 (D. Del. July 31, 2020); *see Craftmatic*, 890 F.2d at 639 ("[A]llegations of failure to disclose

9

mismanagement alone do not state a claim under federal securities law."); *Kooker*, 497 F. Supp. 3d at 9 (same).

Plaintiffs have not convinced the Court that their Section 14(a) based on oversight failures fits within the exception where such claims can proceed in parallel to a fiduciary duty claim. *See In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1077 (C.D. Cal. 2008) (allowing Section 14(a) claim to proceed where corresponding fiduciary duty claim was "of secondary importance"); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1103 (N.D. Cal. 2017) (same). Accordingly, Plaintiffs' § 14(a) claim based on the failure to disclose inadequate oversight of the Company is dismissed without prejudice.

### B. State Law Claims

"The decision whether to initiate or pursue a lawsuit on behalf of the corporation is generally within the power and responsibility of the board of directors." *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009) (citing 8 *Del. C.* § 141(a)). A stockholder plaintiff can pursue claims belonging to the corporation if (1) the corporation's directors wrongfully refused a demand to authorize the corporation to bring the suit or (2) a demand would have been futile because the directors were incapable of impartially considering the demand. *See Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). Because the Plaintiffs did not make a demand on Qualcomm's Board, the Complaint must plead "particularized facts showing that demand ... was excused." *Genworth Fin., Inc. Consol. Derivative Litig.*, 2021 WL 4452338, at *9 (Del. Ch. Sept. 29, 2021); *see also* Del. Ct. Ch. R. 23.1.

The Delaware Supreme Court has recently adopted a three-part test as "the universal test for assessing whether demand should be excused as futile." *United Food & Commercial Workers*

*Union v. Zuckerberg*, 2021 WL 4344361, at *16 (Del. Sept. 23, 2021).[5] Courts must ask the following three questions "on a director-by-director basis" when evaluating allegations of demand futility:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

*Id.* at *17. "If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile." *Id.* This analysis is conducted not only on a "director-by-director basis," *see Zuckerberg*, 2021 WL 4344361, at *16, but also on a "claim-by-claim basis." *Beam v. Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003), *aff'd*, 845 A.2d 1040 (Del. 2004). Here, the Complaint contains five claims. Each claim is addressed in turn.

### 1. Counts I and II – Fiduciary Duties

Counts I and II of the Complaint assert claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, respectively. (D.I. 1 ¶¶ 181-89). At the time this action was commenced, Qualcomm's Board consisted of eleven members. (*Id.* at ¶ 162). In addition, Qualcomm's Certificate of Incorporation contains an exculpatory provision pursuant to 8 *Del. C.* § 102(b)(7).[6] (D.I. 31-1, Ex. H at VII). Thus, for demand to be excused, Plaintiffs must

---

[5] The Delaware Supreme Court issued the *Zuckerberg* opinion after briefing on the motion to dismiss was completed. Both sides notified the Court that the opinion did not change the analysis set forth in their briefs. (*See* D.I. 38; D.I. 39).

[6] On a motion to dismiss, the Court may take judicial notice of matters of public record, including a certificate of incorporation. *See, e.g., In re Wheelabrator Techs., Inc. S'holders Litig.*, 1992 WL 212595, at *11–12 (Del. Ch. Sept. 1, 1992).

demonstrate that six out of the eleven directors are either interested or not independent with respect to a fiduciary duty claim involving a breach of loyalty or good faith. (D.I. 34 at 8). In other words, Plaintiffs must allege with particularity facts creating a reasonable inference that each of the directors acted with scienter. *See Shaev v. Baker*, 2017 WL 1735573, at *10 (N.D. Cal. May 4, 2017) (explaining that plaintiffs must allege scienter when company's charter contains a § 102(b)(7) exculpatory provision).

Plaintiffs proceed under the second prong of the Delaware Supreme Court's *Zuckerberg* test. Specifically, Plaintiffs argue that demand is excused because the Director Defendants face a substantial likelihood of liability for breaching their fiduciary duties by "engaging in and tacitly endorsing illegal conduct." (D.I. 34 at IV.B.2). The Complaint alleges, "The challenged misconduct at the heart of this case involves the direct facilitation of illegal activity, including the Board knowingly and/or consciously presiding over the Company's discrimination against Blacks and minorities at Qualcomm."[7] (D.I. 1 ¶ 166). According to Plaintiffs, demand is futile because the Board was "repeatedly made aware" of the Company's "systemic violations of applicable laws and regulations" and nevertheless chose a "'do nothing' strategy." (*Id.* at ¶¶ 166-70). In the alternative, Plaintiffs allege that demand is futile because the Board took a "direct role[] in implementing a business strategy designed to ignore or otherwise circumvent federal and state laws prohibiting discrimination." (*Id.* at ¶ 177). Plaintiffs contend that their allegations can be

---

[7] The relief sought in the Complaint reaffirms that the focus of this case is racial/ethnic diversity. It seeks mandatory injunctive relief that will replace three directors with "two Black persons and one other minority"; require the publication of annual diversity reports that provide hiring, pay, and promotion statistics "of all minorities"; create an $800 million fund to hire, promote, and mentor "Black and minority employees"; and set "specific goals with respect to the number of Blacks and minority employees to hire at the Company over the next five years." (D.I. 1 Prayer for Relief ¶ B.1, 4-7).

assessed either as a *Caremark*-type oversight claim or as an *Aronson*-type board-decision claim.[8] (D.I. 34 at 12).

The primary problem with Plaintiffs' Complaint is that it lacks the particularized allegations necessary to pass muster under Rule 23.1. First, Plaintiffs never identify any specific laws governing racial/ethnic diversity or discrimination that were violated.[9] Second, if these laws were violated (and repeatedly, as Plaintiffs allege), Plaintiffs never allege the who, what, where, when, and how of those violations. Third, if the Board decided to implement a business strategy designed to circumvent federal and state laws prohibiting racial discrimination, there are no particularized facts regarding either the decision or the strategy. When was the decision made? What exactly was the strategy? How would it circumvent federal and state laws? Finally, if the Board was instead consciously disregarding its duty of oversight, when and how did each member of the Board become aware that laws governing diversity and/or discrimination were being violated? And what information specifically were they given about the violations?

Without these details, this case is nothing like *Rosenbloom* or *Shaev*, as Plaintiffs contend. (*See* D.I. 34 at 10). In *Rosenbloom*, Allergan received several warning letters from the FDA for violating federal laws governing the off-label marketing of Botox and eventually pleaded guilty in a criminal case based on those violations. *Rosenbloom v. Pyott*, 765 F.3d 1137, 1140, 1143 (9th Cir. 2014). Later, Plaintiffs sued for breaches of fiduciary duties alleging that the defendants either

---

[8] A *Caremark* claim "requires a showing that directors *knew* they were not discharging their fiduciary obligations or that they demonstrated a *conscious* disregard for their duties." *In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165, 174 (D. Del. 2009) (emphases in original). In other words, a *Caremark* claim alleges a failure of oversight involving "not merely inattention, but actual scienter." *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2017 WL 6452240, at *1 (Del. Ch. Dec. 18, 2017).

[9] At least one court has held that Delaware law itself does not impose a fiduciary duty to ensure diversity. *See Falat*, 2021 WL 1558940, at *5 ("With respect to [Plaintiff's] claims about racial diversity, Delaware imposes no duty to maintain diversity on a Board of Directors.").

13

deliberately promoted or consciously disregarded the illegal off-label promotion of Botox. *Id.* at 1148-49. Plaintiffs not only pointed to Allergan's prior runs-in with the law to provide particularized allegations that the Company illegally marketed off-label uses of Botox, but also provided lengthy, detailed allegations regarding multiple programs at Allergan designed to aggressively promote the illegal off-label sales of Botox. *Id.* at 1142-44. Similarly, in *Shaev*, the illegality of the conduct at the heart of complaint was clear – the Office of the Comptroller of the Currency and the Consumer Financial Protection Bureau each issued consent orders because Wells Fargo employees were committing fraud by opening tens of thousands of deposit accounts and credit cards in their customers' names, without their customers' knowledge or consent. *Shaev*, 2017 WL 1735573, at *4-5.

Here, Plaintiffs argue that the Board was aware of the unspecified but pervasive legal violations because "Qualcomm's Board is all White," and, "African Americans comprise only 1.5% of the workforce, despite making up 13% of the U.S. population."[10] (D.I. 34 at 13-14, citing D.I. 1 ¶ 10). These allegations raise questions. But, sitting alone without any other particularized allegations, Plaintiffs have failed to create a reasonable inference that there is pervasive illegal racial discrimination at Qualcomm that the Board either consciously disregarded or tacitly endorsed. Therefore, Plaintiffs have failed to plead that the Director Defendants face a substantial likelihood of liability on the fiduciary duty claims such that demand should be excused. Because

---

[10] Defendants take issue with the contention that the Board is "all White," stating that the contention is contradicted by the Complaint itself. (*See* D.I. 35 at 4 (citing D.I. 1 ¶ 3)).

Separately, while I accept as true the statistics in Plaintiffs' statistical comparison between the percentage of African Americans in Qualcomm's workforce and the percentage of African Americans in the U.S. population, Plaintiffs provide no basis for believing this is a meaningful comparison. Qualcomm's workforce is not limited to the United States. As the Complaint itself alleges, Qualcomm is a "multinational corporation" with a "worldwide talent acquisition staff." (D.I. 1 ¶¶ 33, 82). Facile comparisons of groups drawn from different populations do not make Plaintiffs' allegations more plausible.

14

demand was not excused and Plaintiffs failed to make a demand, Counts I and II of the Complaint are dismissed pursuant to Rule 23.1 without prejudice.[11]

### 2. Count III – Abuse of Control

Count III appears to be nothing more than a duplication of the breach of fiduciary duty claim under Count I. Count III is labeled "Abuse of Control" and alleges, "By virtue of their positions and financial holdings at Qualcomm, the Director Defendants exercised control over Qualcomm and its operations, and owed duties as controlling persons to Qualcomm not to use their positions of control for their own personal interests and contrary to Qualcomm's interests." (D.I. 1 ¶ 191). The Complaint itself does not identify any legal source for this purported claim. (*See id.* at ¶¶ 190-93).

To me, the claim appears to be nothing more than a claim for the breach of the fiduciary duty of loyalty under a different label. Under Delaware law, a director using his position of control "to advance his personal interests" at the expense of the company's interests was "the quintessential breach of the duty of loyalty." *CertiSign Holding, Inc. v. Kulikovsky*, 2018 WL 2938311, at *16 (Del. Ch. Une 7, 2018). Plaintiffs presented no argument regarding Count III in their opposition brief. (*See* D.I. 34). Accordingly, Count III is dismissed without leave to amend as it is meaninglessly duplicative.

### 3. Count IV – Unjust Enrichment

The bulk of Plaintiffs' opposition brief argues why demand is excused as to the breach of fiduciary duty and Section 14(a) claims. (*See* D.I. 34 at 21-22). But demand futility analysis is

---

[11] As Delaware courts have repeated for decades, "derivative plaintiffs may believe it is difficult to meet the particularization requirement of [Rule 23.1] because they are not entitled to discovery to assist their compliance with Rule 23.1," but "they have many avenues available to obtain information bearing on the subject of their claims." *Rales*, 634 A.2d at 934 n. 10. For example, "a stockholder... may use the summary procedure embodied in 8 *Del. C.* § 220 to investigate the possibility of corporate wrongdoing." *Id.*

conducted "on a claim-by-claim basis." *Beam*, 833 A.2d at 977. Count IV asserts a claim for unjust enrichment. (D.I. 1 ¶¶ 194-98). Plaintiffs barely address why demand is excused as to the unjust enrichment claim, and then only to discuss Defendant Mollenkopf. (*See* D.I. 34 at 21-22). Even if Plaintiffs are correct that Defendant Mollenkopf was interested and not independent with respect to Count IV, that is only one director out of eleven. One is not a majority. *See Zuckerberg*, 2021 WL 4344361, at *16 (explaining that demand futility requires a majority of the board to be interested or lack independence). Because Plaintiffs have not shown that demand was excused as futile for Count IV, Count IV is dismissed without prejudice pursuant to Rule 23.1.

### 4. Count V – Section 14(a)

Count V asserts a derivative claim on behalf of the Company for violation of Section 14(a) of the Exchange Act against all Defendants. (D.I. 1 ¶¶ 47, Count V). Because Count V is being dismissed for failure to state a claim, the Court need not determine whether demand would be futile. *See Beam*, 833 A.2d at 976–77 (stating that the Court need not address demand futility for claims already being dismissed under Rule 12(b)(6)).

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss the Complaint. (D.I. 29). Counts I, II, and IV (breach of fiduciary duties, aiding and abetting breach of fiduciary duties, and unjust enrichment) are dismissed without prejudice for failure to plead demand futility pursuant to Rule 23.1. Count III (abuse of control) is dismissed without leave to amend. Count V (violations of Section 14(a)) is dismissed for failure to state a claim pursuant to Rule 12(b)(6). Plaintiffs' Section 14(a) claim based on "goal" statements is dismissed with prejudice. All other Section 14(a) claims are dismissed without prejudice.

Plaintiff is granted leave to amend the Complaint except as indicated.